IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALLIANT TAX CREDIT FUND XVI,
LTD., ALLIANT TAX CREDIT XVI,
LLC, ALLIANT TAX CREDIT FUND
XI, LTD. and ALLIANT TAX CREDIT
XI, LLC,

        Plaintiffs,

                        CIVIL ACTION NO.

v.                     1:11-cv-2234-JEC

THOMASVILLE COMMUNITY HOUSING,
LLC and MUSCOGEE COMMUNITY
HOUSING, LLC,

        Defendants.

## ORDER & OPINION

This case is before the Court on plaintiffs' Motion to Strike Defendants' Jury Demand [33], plaintiffs' Motion for Summary Judgment [34], defendants' Motion for Summary Judgment [35], defendants' Motion for Leave to File a Supplemental Pleading [44], and plaintiffs' Motion to Re-file their Statement of Undisputed Facts in Support of Summary Judgment [45].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' Motion to Strike Defendants' Jury Demand [33] should be **GRANTED**, plaintiffs' Motion for Summary Judgment [34] should be

**DENIED**, defendants' Motion for Summary Judgment [35] should be **DENIED**, defendants' Motion for Leave to File a Supplemental Pleading [44] should be **GRANTED,** and plaintiffs' Motion to Re-File their Statement of Undisputed Facts in Support of Summary Judgment [45] should be **DENIED as moot**.

<u>BACKGROUND</u>

This case arises out of the alleged breach of limited partnership agreements (the "Springfield LPA" and the "Windsor LPA") executed in connection with the development of low income housing projects in Thomasville and Muscogee County, Georgia. (Am. Compl. [22] at ¶¶ 10-27.)  The defendant LLCs are the developers of the projects. (Pls.'s Br. in Supp. of Summ. J. ("Pls.' Br.") [34] at 2.) Plaintiffs are investors in the projects.[1] (Am. Compl. [22] at ¶ 9.)

The Springfield LPA created the Springfield Crossing Limited Partnership ("Springfield LP") to own and operate the Springfield Crossing Apartments in Muscogee County. (Defs.' Statement of Material Facts ("DSMF") [35] at ¶¶ 1-4.) Defendant Muscogee Community Housing, LLC ("Muscogee") is the General Partner of the

---

[1] Plaintiffs are part of a tax credit syndicating enterprise. (Pls.' Br. [34] at 1.)  They invested in the projects under the federal low income housing tax credit and federal tax exempt bond programs. (Am. Compl. [22] at ¶ 9.)  Under those programs, plaintiffs obtain federal income tax credits in exchange for their investment in low income housing projects that meet federal guidelines. (*Id.*)

2

Springfield LP. (*Id.* at ¶ 2.) The Windsor LPA created the Windsor Senior Apartments Limited Partnership ("Windsor LP") to own and operate the Windsor Senior Apartments in Thomasville. (*Id.* at ¶ 6.) Defendant Thomasville Community Housing, LLC ("Thomasville") is the General Partner of the Windsor LP. (*Id.* at ¶ 5.) Plaintiffs are Limited Partners of the Springfield LP and the Windsor LP. (Am. Compl. [22] at ¶¶ 10-11.)

The Springfield and Windsor LPAs impose specific reporting duties on defendants. (LPAs at § 13.3, attached to Pls.' Mot. for Summ. J. [34] at Exs. 2 and 3.) Among those duties is the requirement that defendants provide a yearly audited financial statement for each LP, accompanied by the unqualified opinion of a designated accountant. (*Id.* at § 13.3(D).) In addition, the LPAs impose more general fiduciary duties upon defendants concerning cash distributions and the use of partnership funds. (*Id.* at Art. 9.)

Plaintiffs allege that defendants breached the above provisions by, among other things: (1) failing to provide audited financial statements for 2008 and 2009 and (2) making improper cash distributions and misallocating partnership funds. (Am. Compl. [22] at ¶¶ 12-27.) In their complaint, plaintiffs request a declaratory judgment that defendants have committed a "Major Default" of the LPAs as a result of their breaches, entitling plaintiffs to remove defendants from their role as General Partners of the Springfield and

3

Windsor LPs.  (*Id.* at ¶¶ 28-33.)  Plaintiffs also seek specific performance of their contractual right to remove defendants. (*Id.* at ¶¶ 34-49.)

The parties have filed cross-motions for summary judgment on the claims asserted by plaintiffs.  (Pls.' Mot. for Summ. J. [34] and Defs.' Mot. for Summ. J. [35].)  Both parties have also filed motions to supplement or resubmit previously filed pleadings.  (Defs.' Mot. for Leave to File Supplemental Pleading [44] and Pls.' Mot. to Re-File Statement of Undisputed Facts [45].)  In addition, plaintiffs have filed a motion to strike the jury trial demand made by defendants.  (Pls.' Mot. to Strike Jury Demand [33].)

## DISCUSSION

## I.   SUMMARY JUDGMENT MOTIONS

### A.   Applicable Standard

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.* at 249-50.

4

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*,

5

846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

B.   Defendants' Motion

In support of their motion for summary judgment, defendants argue that (1) the type of relief requested in the complaint is unavailable in this case and (2) there is no evidence to suggest that defendants have committed a Major Default that would justify removal under the LPAs. (Defs.' Br. in Supp. of Summ. J. ("Defs.' Br.") [35] at 2, 8-15.)  For the reasons discussed below, neither argument is persuasive.  Accordingly, the Court **DENIES** defendants' motion for summary judgment [35].

1.   <u>Available Relief</u>

As mentioned, plaintiffs assert claims for a declaration and specific performance of their contractual right to remove defendants as General Partners on the ground of a Major Default of the LPAs. (Am. Compl. [22] at ¶¶ 28-49.)  Defendants argue that declaratory relief is not available in this case because their alleged breaches do not create a risk of "future harm." (Defs.' Br. [35] at 9-11.) Defendants further contend that specific performance: (1) would operate as a forfeiture, a result that is disfavored under Georgia

6

law and (2) is precluded by the clean hands doctrine.[2] (*Id.* at 14-
15.)

### a.   Declaratory Relief

The Declaratory Judgment Act allows a Court to "declare the
rights and other legal relations of any interested party" in a case
of "actual controversy."   28 U.S.C. § 2201(a).   For purposes of the
Act, an "actual controversy" exists when there is a "'substantial
continuing controversy between parties having adverse legal
interests.'" *Walden v. Ctrs. for Disease Control and Prevention,* 669
F.3d 1277, 1284 (11th Cir. 2012)(quoting *Emory v. Peeler,* 756 F.2d
1547, 1551-52 (11th Cir. 1985)).   To qualify for relief, the dispute
between the parties must be "definite and concrete" and  susceptible
to "specific relief through a decree of a conclusive character."
*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).

All of the above requirements are met in this case.   Plaintiffs
allege that defendants committed a Major Default by failing to comply
with their reporting and fiduciary duties under the LPAs.   (Am.

───────────────

[2]   The LPAs contain a choice of law provision requiring that they
be governed by the law of the State in which they are to be
performed, in this case Georgia.   (LPAs [34] at ¶ 15.1)   Accordingly,
Georgia law applies.   *See See Grupo Televisa, S.A. v. Telemundo
Commc'ns Grp., Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007)("A federal
court sitting in diversity will apply the conflict-of-laws rules of
the forum state.") and *Kinnick v. Textron Fin. Corp.,* 205 Ga. App.
429, 430 (1992)(Georgia courts "will normally enforce a contractual
choice of law clause" absent a contrary public policy).

7

Compl. [22] at ¶¶ 12-27.) Consequently, plaintiffs contend that they are entitled to exercise their contractual removal rights. (*Id.* at ¶¶ 28-49.) Defendants counter that (1) they have not committed a Major Default and (2) the removal remedy is not available under the circumstances. (Defs.' Br. [35] at 11-15.) The parties thus have a substantial and continuing legal dispute, which can definitively be resolved by the Court's ruling.

The "future harm" language cited by defendants is found in *Walden*, 669 F.3d at 1284. The plaintiff in *Walden* sought a declaratory judgment that defendants violated her First Amendment rights when they terminated her employment. *Id.* The Eleventh Circuit held that such relief was not available because the plaintiff failed to allege that her First Amendment rights "continue to be burdened or are likely to be burdened in the future." *Id.* The *Walden* decision did not import a "future harm" standard into the Declaratory Judgment Act. *Id.* Rather, the decision simply applied the preexisting "continuing controversy" requirement. *Id.*

Unlike the plaintiff in *Walden*, plaintiffs here claim that defendants continue to ignore their contractual removal rights. (Am. Compl. [22] at ¶¶ 16-17, 24-25.) Plaintiffs informed defendants prior to filing this suit that a Major Default had occurred, triggering their right to remove defendants under the LPAs. (*Id.*) Defendants refused, and continue to refuse, to exit the LPs. (*Id.*)

8

Courts routinely consider claims for declaratory relief under similar circumstances. *See Walter Int'l Prod., Inc. v. Salinas,* 650 F.3d 1402, 1406 (11th Cir. 2011)(upholding the district court's declaration of a party's contractual right to inspect accounting books) and *Am. Ins. Co. v. Evercare Co.,* 430 Fed. App'x 795, 799 (11th Cir. 2011)(resolving an insurance coverage dispute by declaratory judgment).

### b.   Specific Performance

The LPAs expressly give plaintiffs the right to remove defendants as General Partners in the event of a Major Default. (LPAs [34] at ¶ 11.4.)  Georgia law requires the enforcement of the LPAs in accordance with their terms. *See Kochis v. Mills,* 233 Ga. 652, 653 (1975)("[p]artners generally . . . may make any agreement between themselves that they deem desirable") and *Hendry v. Wells,* 286 Ga. App. 774, 780 (2007)("plaintiffs were on notice of and bound by the terms of the Partnership Agreement from the day of the investment").  This rule has been applied to removal provisions similar to the one at issue in this case, in spite of the risk of forfeiture. *See Lesesne v. Mast Prop. Mgmt., Inc.,* 251 Ga. 550, 552 (1983)(permitting the removal of a general partner "for whatever reason" in accordance with the partnership agreement) and *Heard v. Carter,* 159 Ga. App. 801, 802 (1981)(upholding the expulsion of defendants from a partnership pursuant to the terms of the

9

partnership agreement).   Indeed, Georgia's Limited Partnership Act specifically contemplates the removal of general partners "in accordance with the partnership agreement."   O.C.G.A. § 14-9-602(a)(3).

As to the clean hands argument, that doctrine requires that "[h]e who would have equity must do equity."   *Park v. Fortune Partner, Inc.,* 279 Ga. App. 268, 273 (2006).   Defendants insinuate that plaintiffs have acted inequitably by engaging in a conspiracy to deprive defendants of their interest in the Springfield and Windsor LPs.   (Defs.' Br. [35] at 14-15.)   However, defendants do not cite any evidence to support their conspiracy theory.   (*Id.*)   They certainly do not offer the undisputed evidence that would be sufficient to sustain summary judgment on this ground.   (*Id.*)

### 2.   Evidence of a Breach

Addressing the merits of the case, defendants argue in their motion that there is insufficient evidence to suggest that defendants committed a Major Default that would justify removal.   (*Id.* at 11-14.)   Pursuant to the LPAs, a Major Default warranting removal is deemed to occur when the General Partners are "in material breach of any material provision . . . of [the LPAs] . . . for sixty (60) days after notice thereof."   (LPAs [34] at § 11.4(A)(i)(c).)   Plaintiffs gave notice to defendants of an alleged material breach with regard to the 2008 and 2009 financial statements in August, 2010.   (Pl.'s

10

Br. [34] at 4.)   Plaintiffs gave notice of additional breaches, including improper cash distributions, in the amended complaint that they filed in December, 2011.  (Am. Compl. [22] at ¶¶ 19, 27.)

Contrary to defendants' argument, there is substantial evidence to support a finding of a Major Default concerning the 2008 and 2009 financial statements.  As mentioned, the LPAs require defendants to send plaintiffs yearly financial statements accompanied by the unqualified audit opinion of a designated accountant.  (LPAs [34] at § 13.3(D).)   The accountant designated by the LPAs is the Reznick Group.  (Defs.' Br. [35] at 6.)  Defendants concede that they did not provide financial statements that were audited by the Reznick Group for 2008 and 2009.  (*Id.*)

Nevertheless, defendants contend that they materially complied with § 13.3(D) of the LPAs by providing financial statements that were audited by the accounting firm Cone & Smith.  (*Id.*)  There is evidence to support defendants' claim to have sent the Cone & Smith audited financials for 2008 and 2009.  (Murphy Aff. [35] at ¶¶ 8, 18-20 and Murphy Dep. at 88-89, 115-117.)  However, the evidence on this issue is disputed.  Plaintiffs claim that they did not receive any audited financial statements until after this litigation was initiated, and they note the absence of any transmission documents to suggest that the financials were sent earlier.  (Pls.' Resp. [41] at 5-7.)

11

Even assuming defendants sent the Cone & Smith financial statements, it is unclear whether those statements materially comply with § 13.3(D) of the LPAs. As noted, § 13.3(D) requires that defendants provide financial statements that have been audited by the designated accountant, in this case the Reznick Group. (LPAs [34] at Art. 1 and § 13.3(D).) Defendants are authorized by the LPAs to hire a different accountant with plaintiffs' consent, "which shall not be unreasonably withheld." (*Id.* at Art. 1.) The evidence shows that defendants obtained consent to use Cone & Smith to conduct the 2008 audit on January 7, 2009, but that plaintiffs withdrew their consent the following day. (PSMF [34] at ¶ 13.) The parties dispute whether the withdrawal was valid and reasonable under the LPAs. (Defs.' Br. [35] at 6 and Pls.' Resp. [41] at 7-10.) Assuming an effective withdrawal, defendants will have materially violated § 13.3(D) by their failure to provide audited financial statements for 2008 and 2009 from a qualified accountant.

In making the above observation, the Court necessarily rejects defendants' argument that § 13.3(D) is not a material provision of the LPAs. (Defs.' Br. [35] at 13.) The requirement that defendants provide audited yearly financial statements is essential to plaintiffs' ability to monitor their substantial investment in the Springfield and Windsor LPs. The Court likewise rejects defendants' argument that their breach of § 13.3(D) was not material because

12

plaintiffs suffered no harm. (*Id.*) Plaintiffs have produced evidence that they were in fact harmed by the alleged breach. (Pls.' Resp. [41] at 12.) In any event, the LPAs do not require harm or actual damages as a condition precedent to finding a "material breach." (LPAs [34] at § 11.4(A)(i)(c).)

There is additional evidence to support plaintiffs' claim that defendants committed other material breaches of the LPA, any one of which might have resulted in a Major Default. (Pls.' Resp. [41] at 12-15.) In particular, plaintiffs have produced evidence, albeit inconclusive, that defendants overpaid themselves and underpaid plaintiffs approximately $90,000 between 2008 and 2010. (*Id.* at 15.) Defendants deny any impropriety, but their denial is insufficient to sustain a motion for summary judgment.

In short, and having reviewed all of the evidence in the record, the Court concludes that summary judgment in favor of defendants is not warranted. With regard to the 2008 and 2009 financial statements, which are the main point of contention in the case, the factfinder must consider: (1) whether plaintiffs approved the change in the designated accountant from Reznick to Cone & Smith or whether their approval was unreasonably withheld, and (2) whether defendants provided financial statements from Cone & Smith that materially complied with § 13.3(D) of the LPAs. Likewise, the factfinder must consider whether defendants misallocated or made unauthorized

13

distributions of partnership assets.  Those facts will determine whether defendants committed a Major Default that justifies removal.

C.  Plaintiffs' Motion

Plaintiffs acknowledge that there are questions of fact concerning most of defendants' alleged violations of the LPAs. (Pls.' Br. [34] at 5.)  Plaintiffs' motion for summary judgment is limited to defendants' failure to provide audited financial statements for 2008 and 2009.  (*Id.*)  As discussed, the evidence on this issue is in dispute.  Defendants claim that they provided audited statements from Cone & Smith that materially complied with their reporting requirements under the LPAs.  (Defs.' Br. [35] at 4, 6-7 and Defs.' Resp. [42] at 2-3, 5-8.)  There is sufficient evidence to raise a material issue of fact as to that claim.  (*Id.*) Accordingly, plaintiffs' motion for summary judgment [34] is **DENIED**.

II.  **MOTIONS TO FILE SUPPLEMENTAL MATERIALS**

A.  Plaintiffs' Motion To Re-File

As a preliminary objection to plaintiffs' motion for summary judgment, defendants asserted that plaintiffs had failed to file a separate statement of facts as required by Local Rule 56.1.  (Defs.' Resp. [42] at 1.)  In spite of the minor technical deficiency, the Court finds that plaintiffs materially complied with Local Rule 56.1 in their original motion.  Although plaintiffs' facts were not set forth in a separate document, they were clearly delineated in a

14

separate section of plaintiffs' brief.  (Pls.' Br. [34] 6-16.)  Each
fact was numbered and supported by specific citations to the record.
(*Id.*)  Defendants were able to respond to each fact, and the Court
did not find the statement to be confusing or misleading.  (Defs.'
Resp. to PSMF [43].)  Accordingly, the Court finds that refiling is
unnecessary and **DENIES** plaintiffs' motion [45] **as moot**.

    B.    Defendants' Motion To Supplement

    In their motion to supplement, defendants seek permission to add
a counterclaim for attorney's fees.  (Defs.' Mot. to File
Supplemental Pleading [44].)  The LPAs provide that the "prevailing
party" in any litigation concerning the agreements is entitled to
recover attorney's fees.  (*Id.* at 1.)  Defendants claim that they
have become convinced through discovery and the summary judgment
motions that they will be the "prevailing part[ies]."  (*Id.* at 2.)
Thus, they assert their motion under Federal Rule 13(e), which allows
supplemental pleading of a counterclaim that "matured" after the
original claim was filed.  (*Id.*)

    Defendants' characterization of their claim for attorney's fees
as having "matured" by virtue of recent developments in the case is
inaccurate.  Given the Court's rulings on summary judgment, it is no
more apparent now than it was when defendants filed their initial
counterclaim whether defendants ultimately will prevail in the
litigation.  Accordingly, the Court will treat defendants' motion as

AO 72A
(Rev.8/82)

a motion to amend under Rule 15(a), rather than a motion to supplement under Rule 13(e).

Federal Rule 15(a) provides that leave to amend shall be "freely give[n] . . . when justice so requires." FED. R. CIV. P. 15(a)(2). Courts therefore generally grant leave unless there is a substantial reason to deny it. *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1270 (11th Cir. 2006)("'In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be freely given.'")(quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Denial of a motion to amend is an abuse of discretion in the absence of some factor to justify the decision, such as "undue delay, undue prejudice to the defendants, [or] futility." *Carruthers v. BSA Adver., Inc.,* 357 F.3d 1213, 1218 (11th Cir. 2004).

Assuming they are ultimately determined to the "prevailing parties" in this litigation, defendants have a right to recover attorney's fees under the LPAs. (LPAs [34] at § 15.1.) Plaintiffs will not suffer any undue delay or prejudice by allowing defendants to assert such a claim at this juncture, as the claim does not require any additional discovery. Moreover, disallowing the amendment would raise the risk of a second lawsuit over attorney's fees at the conclusion of this case. Accordingly, the Court finds that defendants' motion to supplement their counterclaim [44] to add a claim for attorney's fees should be **GRANTED**.

16

### III. **PLAINTIFFS' MOTION TO STRIKE JURY DEMAND**

In addition to the above motions, plaintiffs have filed a motion to strike the jury demand made by defendants in this case. (Pls.' Mot. to Strike Jury Demand [33].) According to plaintiffs, the jury demand is improper because the relief sought in this case is solely of an equitable nature. (*Id*. at 1.) The Court agrees.

There generally is no federal right to a jury trial in cases involving only equitable relief. *Brown v. Alabama Dep't of Transp.,* 597 F.3d 1160, 1184 (11th Cir. 2010). Purely equitable claims, even those involving factual disputes, are properly resolved by the Court rather than a jury. *Ford v. Citizens & S. Nat'l Bank,* 928 F.2d 1118, 1121-22 (11th Cir. 1991)(the right to have a jury determine issues of fact depends on whether "the claim to which those issues relate is legal or equitable"). Plaintiffs seek only a declaration and specific performance of their right to remove defendants as General Partners. (Am. Compl. [22] at ¶¶ 28-49.) Both claims are equitable in nature. *Id.* at 1122 (a claim for specific performance is an equitable action). *See also Jetha v. BH & RMC, LLC,* No. 8:08-CV-402-T-24TBM, 2008 WL 1897593, at *1 (M.D. Fla. Apr. 28, 2008)(Bucklew, J.)(describing the removal of a general partner as equitable relief).

Defendants acknowledge that there is no right to a jury trial where only equitable relief is sought. (Defs.' Resp. to Pls.' Mot. to Strike [37] at 2.) They also concede that plaintiffs are only

17

seeking equitable relief, although they suggest that their removal as General Partners would result in substantial monetary gain to plaintiffs. (*Id.*) Defendants cite no authority finding a right to a jury trial under the circumstances, and the Court has found none. Accordingly, as plaintiffs seek only equitable relief in this case, their motion to strike defendants' jury demand [33] is **GRANTED**.  The remaining factual issues in the case will be resolved by the Court following a bench trial.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiffs' Motion to Strike Jury Demand [33], **DENIES** plaintiffs' Motion for Summary Judgment [34], **DENIES** defendants' Motion for Summary Judgment [35], **GRANTS** defendants' Motion for Leave to File Supplemental Pleading [44], and **DENIES as moot** plaintiffs' Motion to Re-File their Statement of Undisputed Facts in Support of Summary Judgment [45].


SO ORDERED, this 28th day of January, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)